**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VU TRAN, | § | |
| Individually and on behalf of all others | § | |
| Similarly situated, | § | |
| Plaintiffs, | § | No. 4:17-cv-03588 |
| -against- | § | |
| | § | |
| KEANE FRAC TX, LLC; KEANE FRAC | § | |
| ND, LLC; KEANE FRAC GP, LLC; | § | |
| KEANE FRAC, LP, KEANE GROUP, LLC; | § | |
| and KEANE GROUP HOLDINGS, LLC, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION & EXPEDITED DISCOVERY

Respectfully submitted,

*/s/ Carrie B. Hoffman*

Carrie B. Hoffman
Texas Bar No. 00787701
Sandra L. Jonas
Texas Bar No. 24091631
GARDERE WYNNE SEWELL LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX  75201
Telephone:  (214) 999-4262
Facsimile:  (214) 999-3262
E-mail: choffman@gardere.com
E-mail:  sjonas@gardere.com

**ATTORNEYS FOR DEFENDANTS**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND .....................................................................................................2

    A.    Job Requirements of Sand Haulers. ..............................................................2

    B.    Job Requirements of Fleet Drivers. ..............................................................3

    C.    Keane Lawfully Paid its Sand Haulers and Fleet Drivers......................................4

        1.    The Motor Carrier Act Exemption.............................................................4

        2.    Sand Haulers and Fleet Drivers Are Exempt Pursuant to the Motor Carrier Exemption Act. ..............................................................5

III.    ARGUMENT AND AUTHORITIES .....................................................................6

    A.    Plaintiff's Motion Should Be Denied because Plaintiff's Evidence Fails to Show that Sand Haulers and Fleet Drivers Are Similarly Situated in Terms of Job Requirements. ..............................................................9

        1.    The Declarations regarding the Job Requirements of a Fleet Driver Are Vague and Conclusory...............................................................9

        2.    Headley's Declaration Does Not Establish that Sand Haulers and Fleet Drivers Are Similarly Situated..............................................................10

        3.    Keane's Change in Pay Practices Is Not Evidence of an FLSA Violation. ..............................................................11

    B.    Plaintiff's Motion Should Be Denied Because the Issue of Applicability of the Motor Carrier Exemption Requires Individual Inquiries................................12

    C.    The Court Should Not Approve Plaintiff's Proposed Notice because it is Misleading and Inappropriate. ..............................................................13

    D.    The Discovery Sought by Plaintiff is Overbroad and Should Be Limited in Scope..............................................................14

IV.    CONCLUSION.....................................................................................................16

TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acevedo v. Allsup's Convenience Stores, Inc.*,
   600 F.3d 516 (5th Cir. 2010) .................................................................8

*Aguilar v. Complete Landsculpture, Inc.*,
   2004 WL 2293842 (N.D. Tex. Oct. 7, 2004) ...........................................7

*Aguirre v. SBC Commc'ns, Inc.*,
   No. H–05–2198, 2007 WL 772756 (S.D. Tex. Mar. 12, 2007).................7

*Barnard v. Intertek USA, Inc.*,
   C.A. No. 4:11-cv-02198 at * 21.......................................................14, 15

*Beth Ann Brothers v. Portage National Bank*,
   2009 U.S. Dist. LEXIS 109769 (W.D. Penn. Mar. 24, 2009) ..................12

*Brown v. Barnes & Noble, Inc.*,
   252 F. Supp. 3d 255, 263 (S.D.N.Y. 2017)........................................7, 12

*Castro, et al., v. Keane Group, LLC, et al.*,
   CA No. 7:17-CV-00223-RAJ (W.D. Tex.).............................................1

*De la Cruz v. El Paso County Water Imp. Dist. No. 1*,
   2005 WL 2291015 (W.D. Tex. Sept. 19, 2005) ......................................8

*Diaz v. Applied Mach. Corp.*,
   No. CV H-15-1282, 2016 WL 3568087 (S.D. Tex. June 24, 2016)...........4, 5, 6, 7

*Dreyer v. Baker Hughes Oilfield Operations, Inc.*,
   No. H–08–1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008) ..............7

*England v. New Century Fin. Corp.*,
   370 F. Supp. 2d 504 (M.D. La. 2005) ...................................................12

*Gerlach v. Wells Fargo & Co.*,
   No. C 05-0585 CW, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) ..........13

*Harris v. Fee Transp. Servs.*,
   No. Civ.A.3:05CV0077–P, 2006 WL 1994586 (N.D. Tex. May 15, 2006)...........7

*Heeg v. Adams Harris, Inc.*,
   907 F. Supp. 2d 856 (S.D. Tex. 2012) ..................................................7

*Henry v. Express Scripts Holding Co.*,
No. CIV.A. 14-2979 SRC, 2015 WL 790581 (D. N.J. Feb. 24, 2015) ..............................8, 12

*Hoffman-La Roche, Inc. v. Sperling*,
493 U.S. 165, 110 S. Ct. 482 (1989) .....................................................................................13

*Holt v. Rite Aid Corp.*,
333 F.Supp.2d 1265 (M.D. Ala. 2004) ...................................................................................12

*Jaso v. Bulldog Connection Specialists LLC*,
No. 2:15-CV-269, 2015 WL 11144603 (S.D. Tex. Oct. 15, 2015) ...........................................7

*Jones v. Cretic Energy Servs., LLC*,
149 F. Supp. 3d 761, 768 (S.D. Tex. 2015) ..............................................................................6

*Lusardi v. Xerox Corp.*,
118 F.R.D. 351 (D. N.J. 1987) ..................................................................................................6

*Manor v. Dow Chem. Co.*,
2008 WL 2220394 (S.D. Tex. May 28, 2008) ........................................................................12

*Martinez v. Refinery Terminal Fire Company*,
C.A. No. 2:11-cv-0295 (S.D. Tex. Jan. 25, 2012) ..................................................................15

*Mcknight v. D. Houston, Inc.*,
756 F.Supp.2d 794 (S.D. Tex. 2010) ........................................................................................7

*Medina v. Alicia's Mexican Grille Inc.*,
No. 4:15-CV-1192, 2016 WL 3226170 (S.D. Tex. June 13, 2016).............................................6

*Mooney v. Aramco Servs. Co.*,
54 F.3d 1207 (5th Cir.1995) ...........................................................................................6, 7, 8

*Moran v. Ceiling Fans Direct, Inc.*,
No. CIVA H-06-0813, 2006 WL 2868939 (S.D. Tex. Oct. 5, 2006) ......................................13

*Morris v. McComb*,
332 U.S. 422, 68 S. Ct. 131 (1947) ..........................................................................................5

*Nguyen v. Versacom, LLC*,
No. 3:13-CV-4689-D, 2015 WL 1400564 (N.D. Tex. Mar. 27, 2015).....................................15

*Nieddu v. Lifetime Fitness, Inc.*,
977 F. Supp. 2d 686 (S.D. Tex. 2013) ......................................................................................6

*Page v. Nova Healthcare Mgmt., L.L.P.*,
No. CIV.A. H-12-2093, 2013 WL 4782749 (S.D. Tex. Sept. 6, 2013) .........................8, 10, 11

*Richardson v. Wells Fargo Bank,*
   2012 WL 334038 (S.D. Tex. 2012) .................................................................7

*Ryan v. Staff Care, Inc.*,
   497 F. Supp. 2d 820 (N.D. Tex. 2007) ...........................................................7

*Sandoz v. Cingular Wireless LLC,*
   553 F.3d 913 (5th Cir. 2008) ..........................................................................6

*Shushan v. Univ. of Colo.*,
   132 F.R.D. 263 (D. Colo.1990) ......................................................................6

*Siller v. L & F Distributors, Ltd.,*
   No. 96–40549, 1997 WL 114907 (5th Cir.1997) (per curiam) .......................5

*Songer v. Dillon Res., Inc.*,
   618 F.3d 467 (5th Cir. 2010) ..........................................................................5

*Songer v. Dillon Resources, Inc.*,
   569 F. Supp. 2d 703 (N.D. Tex. 2008).............................................................8

*Tolentino v. C & J Spec-Rent Servs. Inc.*,
   716 F. Supp. 2d 642 (S.D. Tex. 2010) ...........................................................13

*Yaklin v. W-H Energy Servs., Inc.*,
   No. CIV.A. C-07-422, 2008 WL 1989795 (S.D. Tex. May 2, 2008)....................13

**STATUTES**

29 U.S.C. § 213(b)(1) ............................................................................................4

FLSA.............................................................................................1, 4, 5, 7, 11, 12

**OTHER AUTHORITIES**

29 C.F.R. 541, *et seq.*...........................................................................................4

29 C.F.R. § 782.2(a)...............................................................................................5

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION & EXPEDITED DISCOVERY

Defendants Keane Frac TX, LLC ("Keane Frac TX"),  Keane Frac, ND, LLC ("Keane Frac ND"), Keane Frac GP, LLC ("Keane Frac GP"), Keane Frac, LP, Keane Group, LLC ("Keane Group"), and Keane Group Holdings, LLC ("Keane Group Holdings") (*collectively* "Defendants" or "Keane") file this Response ("Response") to Plaintiff's Motion for Conditional Class Certification and Expedited Discovery (Plaintiff's "Motion") and respectfully show the Court as follows[1]:

## I. INTRODUCTION

As the saying goes, "no good deed goes unpunished." In recent years, Keane, like many of its competitors in the oilfield services industry, has been involved in a series of FLSA collective action lawsuits. Similarly, a shortage in drivers has made the fracking industry more competitive when it comes to employing drivers. In response, Keane recently revised it pay practices, electing to forego the applicable Motor Carrier Act exemption and pay overtime to retain and attract employees as sand haulers and fleet drivers. This decision, in theory, would have the additional benefit of protecting Keane from further FLSA collective action matters. Instead, Plaintiff filed this lawsuit alleging past violations of the FLSA.

This case is not proper for collective treatment because Plaintiff's evidence falls short of his burden of showing that the potential class is similarly situated. Rather, he relies upon conclusory and vague declarations and an impermissible inference that reclassification is somehow evidence of a FLSA violation. Moreover, conditional certification is also not

---

[1] A case that substantially overlaps with this case has been filed in the Western District of Texas: *Castro, et al., v. Keane Group, LLC, et al.*, CA No. 7:17-CV-00223-RAJ, (W.D. Tex.). Defendants have conferred with opposing counsel in both *Tran* and *Castro* about consolidating these cases but have not yet received their answer. Defendants file this Response subject to their Motion to Stay, which will be filed subsequently.
Defendants file this Response subject to their Motion to Stay, which will be filed subsequent to this Response.

appropriate because this case would require a fact intensive inquiry into each putative class member's status under the Motor Carrier Exemption and the Small Vehicle Exception. Such an individualized analysis contravenes the primary purpose behind collective action lawsuits—*i.e.,* the promotion of judicial economy—and wastes the time and resources of both the Court and the parties. For these reasons, Defendants respectfully requests that the Court deny Plaintiff's Motion for Conditional Certification.

## II.  BACKGROUND

Keane is a premiere North American energy services provider. Exhibit 1, Montgomery Declaration at ¶ 4. One of Keane's specializations is hydraulic fracturing ("fracking"). *Id*. Fracking is the process by which gas is extracted from the ground. *Id*. Fracking is the process by which hydrocarbons are extracted from the ground. *Id.* The fracking process first requires a well to be drilled vertically, stretching over a mile underground. *Id*. Then, the well is drilled horizontally, parallel to the surface of the ground. *Id*. Machinery is used to inject a highly pressurized mix that includes water and sand into the horizontal portion of the well to create tiny fractures in the rock, thereby releasing trapped hydrocarbons. *Id*. at ¶ 5. Fracking requires sophisticated machinery, such as pumps and blenders, as well as a tremendous amount of sand for pumping into the well. *Id.* at ¶ 6. Keane's sand haulers and fleet drivers are essential to Keane's operations. *Id.*

### A.  Job Requirements of Sand Haulers.

Keane employs sand haulers to transport sand extracted from various mines in the upper Midwest and, recently Texas, to its well sites in Texas. *Id*. at ¶ 7. Keane's sand haulers are assigned a tractor trailer that weighs approximately 30,000 pounds when empty and approximately 80,000 pounds when loaded with sand. *Id*. Sand haulers exclusively drive trucks

---

weighing over 10,000 pounds in the performance of their jobs. *Id*. Based on the nature of their position, sand haulers sleep in the sleeper berth of their tractor trailers when traveling overnight. *Id*. at ¶ 8. Sand haulers must maintain a valid Commercial Driver's License ("CDL") and operate their assigned tractor trailers in accordance with all Department of Transportation ("DOT") regulations. *Id*. Moreover, sand haulers must "perform safety checks prior to operation to protect employees, equipment, and properties," and conduct properly documented unit inspections. *Id*. at ¶ 9. Sand haulers frequently travel across state lines in the course of their duties and in any given workweek. *Id*. They are expected to travel across state lines, and are not permitted to refuse hauls based on location, as long as it is safe and within DOT regulations. *Id*.

### B.      Job Requirements of Fleet Drivers.

Keane's fleet drivers are a separate group of drivers from sand haulers. *Id*. at ¶ 10. Fleet drivers deliver industrial fracking equipment to and from various fracking sites (in Texas and New Mexico) and Keane's Texas facilities in Springtown, Midland, and/or Odessa. *Id*. Like sand haulers, fleet drivers maintain a valid CDL and also drive trucks exceeding 10,000 pounds. *Id*. at ¶ 11 Unlike sand haulers, however, fleet drivers are not assigned their own vehicle. *Id*. Fleet drivers are responsible for communicating daily with the Fleet Supervisors regarding equipment that is needed to keep the operations running. *Id*. at ¶ 12. Fleet drivers transport equipment, including equipment in need of repair, and transport it to Keane's worksites and repair facility. *Id*. at ¶ 13. Fleet drivers also haul equipment for "pad moves." at ¶ 14. A "pad move" occurs when a fracking operation on one pad is complete and fleet drivers transport Keane's equipment to the next site. *Id*. Fleet drivers are not allowed to refuse any assignment as long as it is safe and within DOT regulations. This includes those involving travel to the New Mexico site(s) and which they may be required to do in any given workweek. *Id*.

**C.      Keane Lawfully Paid its Sand Haulers and Fleet Drivers.**[2]

Plaintiff claims that Keane's pay practices "plainly" violate the FLSA. Pl. Mtn., Dkt. 22 at p. 5. Plaintiff's support for this contention is an assertion that sand haulers and fleet drivers worked over forty hours per week and were not paid overtime. *Id*. at p. 6. To bolster his allegation that Keane violated the FLSA, Plaintiff represents that Defendants "admit[ed] that [Keane][3] knew Tran worked over forty hours per week and that it paid him straight time for overtime." *Id*. at p. 3. On the contrary, Defendants admitted only that Tran occasionally worked in excess of forty hours per week and that Keane Frac, LP paid him ***properly*** under the FLSA. Def. Answer, Dkt. 19 at ¶¶ 24; 25; 35; 36; 37. Indeed, sand haulers and fleet drivers were paid properly. They were never ***entitled*** to overtime because they were – and continue to be – exempt under the Motor Carrier Exemption. Keane's decision to forego this exemption and pay overtime does not alter its applicability.[4]

1.      The Motor Carrier Act Exemption

The Motor Carrier Act exemption applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). The Secretary of Transportation has the power to establish qualifications and maximum hours for employees who: (1) are "employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act;" and (2) "engage in

---

[2] Although this Court has stated that merits analysis is not persuasive at the notice stage, *Diaz v. Applied Mach. Corp*., No. CV H-15-1282, 2016 WL 3568087, at *9 (S.D. Tex. June 24, 2016), Defendants respond to Section B of Plaintiff's Motion in which Plaintiff discusses his theory that Defendants' pay practices violated the FLSA. Pl. Mtn., Dkt. 22, at p. 3-6.

[3] Plaintiff uses the fictitious name "Keane Fracking" to refer to Defendants. No such entity exists. The proper employing entity is Keane Frac, LP.

[4] An employer is not required to pay an employee who is exempt under the Motor Carrier Exemption on a salaried basis, unlike the "white collar exemptions." 29 C.F.R. 541, *et seq*.

activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a).

The Motor Carrier Act defines interstate commerce as commerce "between a place in a state and a place in another state," yet this definition has not been applied literally by the courts. *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472 (5th Cir. 2010). The Fifth Circuit defines "interstate commerce" as "the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce." *Id.* (citing *Siller v. L & F Distributors, Ltd.,* No. 96–40549, 1997 WL 114907, at *1 (5th Cir.1997) (per curiam)). Moreover, "actual transport of goods across state lines" includes the reasonable expectation that an employee may be called upon to transport goods across state lines, even where the overwhelming majority of employees did not, in fact, cross state lines. *See Morris v. McComb*, 332 U.S. 422, 431, 68 S. Ct. 131, 135 (1947) (applying motor carrier exemption where only 3-4% of the services involved interstate travel.).

2. Sand Haulers and Fleet Drivers Are Exempt Pursuant to the Motor Carrier Exemption Act.[5]

Tran and the purported class fall squarely within the Motor Carrier Exemption. As part of their job duties, sand haulers and fleet drivers are required to have a valid CDL and are required, or reasonably can expect to be called upon, to drive across state lines. Exhibit 1, Montgomery Declaration at ¶¶ 7- 9; 11. Moreover, both sand haulers and fleet drivers exclusively drive vehicles in excess of 10,000 pounds in the performance of their duties. Exhibit 1, Montgomery Declaration at ¶ 7. Accordingly, Keane paid its sand haulers and fleet drivers properly under the FLSA and Plaintiff can point to no illegal pay practice with which to bind the class.

---

[5] Because merits defenses are typically not persuasive at the notice stage, *Diaz*, 2016 WL 3568087, at *9, Defendants refrain from a detailed discussion of the applicability of the Motor Carrier Exemption to sand haulers and fleet drivers and the inapplicability of the Small Vehicle Exception.

## III.  <u>ARGUMENT AND AUTHORITIES</u>

To determine whether collective action treatment is appropriate, this Court uses the *Lusardi* approach.[6] The *Lusardi* approach occurs in two stages. *Medina v. Alicia's Mexican Grille Inc.*, No. 4:15-CV-1192, 2016 WL 3226170, at *1 (S.D. Tex. June 13, 2016). At the first stage, the "notice" stage, courts make a preliminary determination of whether potential plaintiffs are similarly situated to the named plaintiff. *Id.* The Court may base its determination on the pleadings and party affidavits. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008); *see also Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995). To prevail at the notice stage the plaintiff "bears the burden of making a preliminary factual showing that other similarly situated individuals exist such that the court should provide notice of the action to putative class members." *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013). More specifically, the plaintiff must show that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted and (3) those individuals want to opt in to the lawsuit.[7] *See Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015).

---

[6] For the purposes of collective actions, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D. N.J. 1987), or (2) the "spurious class action" analysis described in *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo.1990). The Fifth Circuit has left open the question of which analysis courts should use. *See, Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir.1995) (declining to determine which of the two analyses is appropriate). This Court, however, has shown that it adheres to the *Lusardi* approach.  *See, Diaz v. Applied Mach. Corp.*, No. CV H-15-1282, 2016 WL 3568087, at *4 (S.D. Tex. June 24, 2016) (explaining that this Court will follow the *Lusardi* approach) (J. Lake); *see also*, *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015) (discussing the two analyses and analyzing motion for conditional certification under the *Lusardi* approach) (J. Lake). Accordingly, Defendants base their response on the *Lusardi* approach.

[7] Courts in the Fifth Circuit are divided regarding the requirement to show the third element. This Court has shown it does not require showing the third element. *See Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015) (declining to require a showing of individuals who want to opt in to the lawsuit) (J. Lake).

---

To meet this burden, a plaintiff must provide "substantial allegations" that he and the putative class are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Jaso v. Bulldog Connection Specialists LLC*, No. 2:15-CV-269, 2015 WL 11144603, at *4 (S.D. Tex. Oct. 15, 2015) (quoting *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007)); *see also Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (Potential class members are considered similarly situated to the named plaintiff if they are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions."). Conditional certification should not be granted if the job duties among potential members of the class "vary significantly." *Dreyer v. Baker Hughes Oilfield Operations, Inc.,* No. H–08–1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) (citing *Harris v. Fee Transp. Servs.,* No. Civ.A.3:05CV0077–P, 2006 WL 1994586, at *5 (N.D. Tex. May 15, 2006)); *Aguirre v. SBC Commc'ns, Inc.,* No. H–05–2198, 2007 WL 772756, at *9 (S.D. Tex. Mar. 12, 2007) (noting that plaintiffs are not similarly situated if their job duties vary "substantially").

The plaintiff must also show that putative class members were together the victims of an ***illegal*** decision, policy, or plan. *See Richardson v. Wells Fargo Bank,* 2012 WL 334038, at * 2 (S.D. Tex. 2012) (citing *Mcknight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 800-02 (S.D. Tex. 2010)); *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842 at *2 (N.D. Tex. Oct. 7, 2004) (*citing Mooney*, 54 F.3d at 1214); *Diaz v. Applied Mach. Corp.*, No. CV H-15-1282, 2016 WL 3568087, at *3 (S.D. Tex. June 24, 2016) (citing *Mooney*, 54 F.3d at 1213-14). Evidence that an employer reclassified its employees is **not** evidence of a FLSA violation, even at the stage of conditional certification and, in fact, should not be considered. *See, e.g.*, *Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 263 (S.D.N.Y. 2017) (holding that reclassification is "insufficient" to justify conditional certification, noting the "many legitimate business reasons"

an employer may reclassify its employees, and denying conditional certification); *Henry v. Express Scripts Holding Co.*, No. CIV.A. 14-2979 SRC, 2015 WL 790581, at *1 (D. N.J. Feb. 24, 2015) (denying conditional certification where plaintiffs relied on employer's reclassification as evidence of a common a common policy or plan that violated the law).

Although courts apply a fairly lenient standard at the notice stage, conditional certification is ***not*** automatic. *See, Songer v. Dillon Resources, Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (denying conditional certification, finding plaintiffs' submission of "virtually identical" affidavits that "contain[ed] primarily conclusory allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge" insufficient to show the existence of similarly situated employees who worked off-the-clock.); s*ee also, De la Cruz v. El Paso County Water Imp. Dist. No. 1*, 2005 WL 2291015, at *2 (W.D. Tex. Sept. 19, 2005) (denying conditional certification where "[t]he evidence before the Court include[d] only unsupported assertions of violations" and "Plaintiffs produce[d] only conclusory statements that [did] not even meet a 'modest factual showing'").

Only after a court determines that the employees are similarly situated is notice sent to the potential class members who may "opt in" to the lawsuit. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (citing *Mooney,* 54 F.3d at 1214). After discovery has largely been completed, the court then makes a final determination on certification and whether the case can proceed on a collective basis. *Page v. Nova Healthcare Mgmt., L.L.P.*, No. CIV.A. H-12-2093, 2013 WL 4782749, at *3 (S.D. Tex. Sept. 6, 2013).

A.   **Plaintiff's Motion Should Be Denied because Plaintiff's Evidence Fails to Show that Sand Haulers and Fleet Drivers Are Similarly Situated in Terms of Job Requirements.**

Conditional certification for this proposed class should be denied because Plaintiff has failed to make a modest factual showing that other allegedly aggrieved individuals are similarly situated to Plaintiff. Plaintiff proposes the following class for conditional certification:

> All drivers[8] and/or [fleet][9] drivers employed by Keane Fracking during the last three years at the following locations: 8200 E. IH-20, Odessa, Texas 79766 and 354 West Bradshaw, Springtown, Texas 76082.
>
> All sand haulers employed by Keane Fracking during the last three years at the following locations: 8200 E. IH-20, Odessa, Texas 79766 and 354 West Bradshaw, Springtown, Texas 76082.

Pl. Mtn., Dkt. 22 at 10. Plaintiff's attempted "factual showing" that the proposed potential plaintiffs are similarly situated consists of the following conclusory allegation:

> The fact that Tran and all of the opt-in plaintiffs all work at the same two yards, are assigned the same or substantially similar tasks, and are uniformly paid straight time for overtime establishes that they are similarly situated.

Pl. Mtn. for Cond. Cert., Dkt. 22 at p. 8. Far from "establishing" that fleet drivers and sand haulers at Odessa and Springtown are similarly situated, Plaintiff's evidence – four declarations – establishes that conditional certification is not appropriate.

1.   <u>The Declarations regarding the Job Requirements of a Fleet Driver Are Vague and Conclusory.</u>

Plaintiff presents three declarations from sand haulers "doing the work" of fleet drivers. These are nearly identical and are so conclusory that it is impossible to determine

---

[8] "Drivers and/or fleet drivers" is vague and ambiguous." Specifically, Plaintiff does not explain the scope of the class of employees he intends by "driver" separate from that of fleet driver. Presumably, this classification could cover any employee who drives any vehicle for any purpose while on duty. Such an expansive class is unsupported by Plaintiff's declarations, which are provided only by sand haulers and sand haulers doing the work of fleet drivers. Pl. Mtn. for Cond. Cert, Pl. Mtn., Tran Decl., Dkt. 22-1 at ¶ 7; Escamilla Decl., Dkt. 22-2 at ¶ 8; Charee Decl., Dkt. 22-3 at ¶ 7; Headley Decl., Dkt. 22-2 at ¶ 7. As such, if the Court grants certification, it should limit the putative class to Keane's Texas-based sand haulers and fleet drivers.

[9] Plaintiff refers to Keane's fleet drivers as "logistics" drivers. The job title, however, is "Fleet Driver."

whether they are similarly situated in terms of job requirements. Indeed, the declarations from Tran, Escamilla, and Charee describe their work of a fleet driver as the following:

> [M]y primary job duty is to deliver oilfield equipment, parts, and any other item requested from the [Keane] yard in Odessa, Texas to drilling locations within the State of Texas, mostly in the Midland/Odessa area.

Pl. Mtn. for Cond. Cert, Pl. Mtn., Tran Decl., Dkt. 22-1 at ¶ 7; Escamilla Decl., Dkt. 22-2 at ¶ 8; Charee Decl., Dkt. 22-3 at ¶ 7. This statement does not specify the type of "oilfield equipment, parts, and any other item requested" that fleet drivers deliver. Moreover, it is unknown how often they travel to the Keane facility versus frac sites, how long they spend at various frac sites, whether they are involved in loading or unloading the equipment they transport, with whom they communicate to receive their instructions, and when they can leave the fracking site. *Id.* Accordingly, the declarations by Tran, Escamilla, and Charee are too conclusory and lacking in detail for the Court to determine whether the putative class is similarly situated to Tran.

### 2.    Headley's Declaration Does Not Establish that Sand Haulers and Fleet Drivers Are Similarly Situated.

Without useful evidence from Tran, Escamilla, and Charee, Plaintiff's only remaining evidence is Headley's declaration. There is no evidence with which to compare Headley's job duties for a determination of whether Plaintiff has made a modest factual showing that the putative class members are similarly situated to Tran. Additionally, Headley's declaration clearly establishes that – at minimum – *his* duties are substantially different from the duties of Tran and presumably other putative class members. For example, Headley states that he hauls sand (not various equipment and "other items requested"). Headley Decl., Dkt. 22-2 at ¶ 7. Moreover, Headley's duties include "waiting time" – a duty that is not mentioned in the declarations by Tran, Charee, and Escamilla. *Id*. Headley describes "waiting time" as a period of time after which he arrives at the frac site that he is required to stay with his truck until he is notified that

he may proceed to the well for pumping. *Id.* Headley states that "waiting time" lasts anywhere from five to twenty-four hours. *Id*. Conversely, there is no evidence that Tran's duties include "waiting time."

Additionally, Headley describes physical labor as part of his job requirements. Specifically, Headley states that he is responsible for rigging up hoses to unload the sand and rigging down the equipment. Headley also states that he operates equipment at the well site. *Id*. Conversely, there is no evidence that the job requirements of fleet drivers include physical labor and operating equipment at the well site. *See,* Pl. Mtn. for Cond. Cert, Tran Decl., Dkt. 22-1 at ¶ 7; Escamilla Decl., Dkt. 22-2, at ¶ 8; Charee Decl., Dkt. 22-3, at ¶ 7. As such, Headley's declaration establishes that, at minimum, his duties are significantly different than Tran's, making conditional certification inappropriate.

Plaintiff has failed to meet his burden of making "substantial allegations" and a "modest factual showing" that the job duties of sand haulers and fleet drivers at the Odessa and Springtown locations are similarly situated to Tran. Plaintiff's Motion for Conditional Certification should therefore be denied.

### 3.   Keane's Change in Pay Practices Is Not Evidence of an FLSA Violation.

Plaintiff's only purported evidence of an FLSA violation is the allegation that Keane reclassified the putative class in December 2017. Pl. Mtn. for Cond. Cert, Pl. Mtn., Tran Decl., Dkt. 22-1 at ¶ 13-14; Escamilla Decl., Dkt. 22-2 at ¶¶ 14-16; Charee Decl., Dkt. 22-3 at ¶13-14. Specifically, Plaintiff's supporting declarations assert that on December 5, 2017, Keane announced it would begin paying them overtime. *Id*. The declarations also include speculation that Keane's new pay practice applied to the putative class members regardless of their job duties. *Id*. These statements are nearly identical to the inadequate declaration statements in

*Henry v. Express Scripts Holding*, No. CIV.A. 14-2979 SRC, 2015 WL 790581, at *1 (D. N.J. Feb. 24, 2015) (denying conditional certification where supporting declarations claimed the employer reclassified a group of employees and did not review their job duties in making that decision). As such, Plaintiff's allegation that Keane altered its pay practices is not evidence supporting conditional certification. *See, e.g.*, *Brown*, 252 F. Supp. at 263; *Express Scripts Holding* 2015 WL 790581, at *1. The Court should therefore disregard these statements.

**B.     Plaintiff's Motion Should Be Denied Because the Issue of Applicability of the Motor Carrier Exemption Requires Individual Inquiries.**

When individual inquiries predominate, conditional certification is improper. "Courts have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required would eliminate 'the economy of scale envisioned by the FLSA collective action procedure.'" *Manor v. Dow Chem. Co.*, 2008 WL 2220394 at *8 (S.D. Tex. May 28, 2008) (quoting *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1275 (M.D. Ala. 2004)); *see also England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005). When individual issues predominate, claims must be tried individually so that the court and the parties can address the unique facts and circumstances with respect to each plaintiff. *Beth Ann Brothers v. Portage National Bank*, 2009 U.S. Dist. LEXIS 109769, *19 (W.D. Penn. Mar. 24, 2009) ("The fact intensive nature of such individualized determinations are the hallmark of individual actions, not collective actions."). Here, the parties must offer evidence of the applicability of Motor Carrier Exemption and the inapplicability of the Small Vehicle Exception for each putative class member. Conditional certification is therefore improper.

### C.    The Court Should Not Approve Plaintiff's Proposed Notice because it is Misleading and Inappropriate.[10]

Even if the Court conditionally certifies the collective action, it should not approve Plaintiff's proposed notice. A court must review a proposed notice to ensure it is timely, accurate, informative, and not misleading. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172, 110 S. Ct. 482, 484 (1989). A notice that is argumentative and/or one-sided should not be approved. *See, e.g., Gerlach v. Wells Fargo & Co.,* No. C 05-0585 CW, 2006 WL 824652, at *4 (N.D. Cal. Mar. 28, 2006) (finding plaintiffs' proposed notice to be one-sided and argumentative and therefore inappropriate).

Plaintiff's proposed notice is inaccurate and misleading for several reasons. First, it suggests that a determination has already been made that Keane owes unpaid wages. "The employees in this case claim that [Keane] did not pay them for all overtime hours worked as required by federal law." Pl. Mtn., Dkt. 22-6. It is unclear from this statement that Plaintiff bears the burden of establishing entitlement to overtime, and that Defendant has raised defenses. *Yaklin v. W-H Energy Servs., Inc.*, No. CIV.A. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008). ("[T]he notice to potential class members must contain a brief explanation of Defendants' bases for disputing liability.").

Second, Plaintiff's proposed notice fails to inform the putative class of their right to hire an attorney of their own choosing to represent them in this action. *See, Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010) ("[T]the notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case."); *Yaklin v. W-H Energy Servs., Inc.*, No. CIV.A. C-07-422, 2008 WL 1989795, at *4 (S.D.

---

[10] Keane has attached a revised notice to correct deficiencies in the event that the Court conditionally certifies the class. Exhibit 2.

Tex. May 2, 2008) (same); *Moran v. Ceiling Fans Direct, Inc.*, No. CIVA H-06-0813, 2006 WL 2868939, at *2 (S.D. Tex. Oct. 5, 2006) ("The potential class needs to be aware that … they may contact and discuss this matter with any attorney of their choosing.").

Finally, the Plaintiff's proposed notice uses inaccurate references, such as "Keane Fracking" and "logistics drivers." "Keane Fracking" is a fictitious name that Plaintiff invented, and "logistics drivers" are "fleet drivers." To be accurate, as a proposed notice must be, the notice should use the correct name of the employing entity: Keane Frac, L.P, and should use Keane's job title of "fleet driver" instead of "logistics driver."

**D.      The Discovery Sought by Plaintiff is Overbroad and Should Be Limited in Scope.**

In his Motion, Plaintiff requests "verified contact information (i.e., names, last known addresses, and email addresses) for all putative class members…" Pl. Mtn., Dkt. 22, at p. 10.  In his proposed motion, however, Plaintiff seeks far more, requesting in "both hardcopy and computer readable format" the following for all individuals who worked as a sand hauler, driver, and/or fleet driver for the past three years:

    (1) Full names;
    (2) Email address;
    (3) Last known mailing addresses;
    (4) Social Security numbers;
    (5) All known telephone numbers;
    (6) Dates of employment;
    (7) Locations of employment; and
    (8)  Nature of employment.

Pl. Proposed Order, Dkt. 22-8 at p. 2. This request for information is overly broad for several reasons and should therefore be limited. If notice is granted, Keane should only be required to provide contact information for sand haulers and fleet drivers based out of Texas because Plaintiff does not assert facts beyond Texas-based employees *See*, *Barnard v. Intertek USA, Inc.*,

C.A. No. 4:11-cv-02198 at * 21 (limiting discoverable contact information to current and former employees "fitting the description of the conditionally certified class.").

Moreover, Plaintiff's request for email addresses, all telephone numbers, and (most egregiously) social security numbers is overly broad and would result in the unnecessary intrusion of privacy. *See, e.g., Nguyen v. Versacom, LLC*, No. 3:13-CV-4689-D, 2015 WL 1400564, at *13 (N.D. Tex. Mar. 27, 2015) (holding "the need for compelled disclosure of prospective class members' telephone numbers, email addresses, and social security numbers is outweighed by their privacy interests, and that there is no apparent reason to conclude that sending a letter to a person's last known address will be inadequate."); *see, also*, *Martinez v. Refinery Terminal Fire Company*, C.A. No. 2:11-cv-0295 (S.D. Tex. Jan. 25, 2012)(ECF No. 54) (ordering  Plaintiffs to "refrain from using cell phone numbers unless all other methods of contact fail."). Indeed, none of the authority upon which Plaintiff relies grants the entirety of contact information that Plaintiff requests. For example, in *Barnard v. Intertek USA, Inc*., the court specifically ordered that the defendant was ***not*** required to produce personal email addresses, or personal and home phone numbers of potential plaintiffs unless attempts to contact potential plaintiffs by the following contact information was unsuccessful: names, positions, dates of employment, current or last known addresses, work telephone numbers, and work email addresses. C.A. No. 4:11-cv-02198 at * 21. The Court should limit discovery to names, addresses, and personal email, if available, with the instructions that Plaintiff only use the email addresses if other, less intrusive means are unsuccessful.

Additionally, Keane is neither required to manufacture information or provide any information that is not already in its record. Keane maintains an excel spreadsheet with the names, dates of employment, last known address, and job title of its employees. Moreover,

Keane does not maintain this information in hard copy and should not be required to create physical copies of its computer-readable data. The excel spreadsheet provides sufficient information for Plaintiff to locate potential plaintiffs and Plaintiff's counsel can print out their own copies.

Finally, Plaintiff is also seeking a "description of the nature of employment" for each putative class member. This request is vague and, more importantly, seeks information that does not aid Plaintiff in sending notice to the putative class. Indeed, Plaintiff provides no explanation for why this information is necessary at this stage. Rather, this request more appropriate for merits discovery. Similarly, there is no justification for requiring Keane to verify the contact information provided. As such, the Court should deny these unfounded requests.

## IV. CONCLUSION

Defendants respectfully requests that the Court deny Plaintiff's Motion for Conditional Certification and Expedited Discovery because Plaintiff has failed to meet his burden. If, however, the Court determines that conditional certification is warranted, Defendant requests that the proposed class definition be properly limited to all sand haulers employed by Keane at the Odessa Yard and Springtown Yard for the last three years or other class definition as this Court deems just. Finally, if the Court conditionally certifies any class of persons, regardless of definition, Defendant requests that the Notice be properly limited to conform to Defendant's proposed notice attached to this response or that the Court order the parties to jointly draft a proposed notice.

Dated:  January 16, 2018

Respectfully submitted,

/s/ Carrie B. Hoffman

Carrie B. Hoffman
Texas Bar No. 00787701
Sandra L. Jonas
Texas Bar No. 24091631
GARDERE WYNNE SEWELL LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX  75201
Telephone:  (214) 999-4262
Facsimile:  (214) 999-3262
E-mail: choffman@gardere.com
E-mail:  sjonas@gardere.com

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to ECF rules, this document shall be electronically served to all counsel of record in this matter via the Court's Notice of Electronic Filing automatically generated by the ECF system.

/s/ Sandra L. Jonas
Sandra L. Jonas

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VU TRAN, Individually and on behalf of all others Similarly situated, §<br>Plaintiffs, | § § § § | |
| -against- | § § | No. 4:17-cv-03588 |
| KEANE FRAC TX, LLC; KEANE FRAC ND, LLC; KEANE FRAC GP, LLC; KEANE FRAC, LP, KEANE GROUP, LLC; and KEANE GROUP HOLDINGS, LLC, | § § § § § | |
| Defendants. | § § | |

## DECLARATION OF MICHAEL MONTGOMERY

Pursuant to 28 U.S.C. § 1746:

1.     "My name is Michael Montgomery. I am over the age of 18 years, of sound mind, capable of making this declaration, and have personal knowledge of the facts stated in this declaration.

2.     I am currently employed by Keane Frac, LP as the Proppant Supply Chain Manager. I have worked for Keane-related companies (collectively, "Keane") since 2013.

3.     During my work with Keane, I oversaw Keane's fleet drivers and sand haulers, and I am knowledgeable about the job requirements of both. I am also knowledgeable about hydraulic fracturing ("fracking") procedures and operations.

4.     Keane is a premiere North American energy services provider. One of Keane's specializations is hydraulic fracturing ("fracking"). Fracking is the process by which hydrocarbons are extracted from the ground. The fracking process first requires a well to be drilled vertically, stretching over a mile underground. Then, the well is drilled horizontally, parallel to the surface of the ground.

5.     Machinery is used to inject a highly pressurized mix that includes water and sand into the



horizontal portion of the well to create tiny fractures in the rock, thereby releasing trapped hydrocarbons.

6.      Fracking requires sophisticated machinery, such as pumps and blenders, as well as a tremendous amount of sand for pumping into the well. Sand haulers and fleet drivers are essential to Keane's operations.

7.      Keane employs sand haulers to transport sand extracted from various mines in the upper Midwest and, recently Texas, to its well sites in Texas. Keane's sand haulers are assigned a tractor trailer that weighs approximately 30,000 pounds when empty and approximately 80,000 pounds when loaded with sand. Sand haulers exclusively drive trucks weighing over 10,000 pounds in the performance of their job duties.

8.      Based on the nature of their position, sand haulers sleep in the sleeper berth of their tractor trailers when traveling overnight. Sand haulers must maintain a valid Commercial Driver's License ("CDL") and operate their assigned tractor trailers in accordance with all Department of Transportation ("DOT") regulations. Exhibit A.

9.      Moreover, sand haulers must "perform safety checks prior to operation to protect employees, equipment, and properties," and conduct properly documented unit inspections. *Id.* Sand haulers frequently travel across state lines in the course of their duties and in any given workweek, are expected to travel across state lines, and are not permitted to refuse hauls based on location, as long as it is safe and within DOT regulations..

10.     Keane's fleet drivers are a separate group of drivers from sand haulers. Fleet drivers deliver industrial fracking equipment to and from various fracking sites (in Texas and New Mexico) and Keane's Texas facilities in Springtown, Midland and/or Odessa.

11.     Like sand haulers, fleet drivers maintain a valid CDL and also exclusively drive trucks

exceeding 10,000 pounds in the performance of their job duties. Unlike sand haulers, however, fleet drivers are not assigned their own vehicle.

12.     Fleet drivers are responsible for communicating daily with the Fleet Supervisors regarding equipment that is needed to keep the operations running.

13.     Fleet drivers transport equipment, including equipment in need of repair, and transport it to Keane's worksites and repair facility.

14.     Fleet drivers also haul equipment for "pad moves." A "pad move" occurs when a fracking operation on one pad is complete and fleet drivers transport Keane's equipment to the next site. Fleet drivers are not allowed to refuse any assignment as long as it is safe and within DOT regulations. This includes those involving travel to the New Mexico site(s) and may be required to do so in any given workweek.

15.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Executed in the State of Pennsylvania on this 16th day of January, 2018.


_____
MICHAEL MONTGOMERY

**Keane Frac LP**
**Employment Offer Term Sheet**

| Term | Provision |
|---|---|
| Effective Date | January 16, 2018 |
| Employee | |
| Employer | Keane Frac TX, LLC  (the "Company") |
| Title | Sand Hauler |
| Reports to | Permian Proppant Fleet Operations Manager |
| Functions & Responsibilities | <ul><li>Operate the truck assigned in accordance with all DOT regulations.</li><li>Obey all traffic rules (speed limits, load limits, etc).</li><li>Perform safety checks prior to operation to protect employees, equipment, and properties.</li><li>Conducts routine and pre-trip and post-trip unit inspections with proper documentation.</li><li>Follows all Keane and client HSE policies and procedures.</li><li>Monitor the preventative maintenance schedule for the vehicle assigned.</li><li>Maintain a valid CDL.</li><li>Assist and monitor the loading of assigned vehicle.</li><li>Keep the interior and exterior of vehicle clean.</li><li>Record fuel usage. IFTA/HUT</li><li>Responsible for everything related to his truck, trailer, and cargo.</li><li></li></ul> |
| Location | Midland, TX |
| Base Wage | $19.00/hr (exempt from overtime per Section 13(b)(1) of the FLSA).  Any hours that may be designated for sleep in trucks will not be compensated. |
| Additional Benefits | You will be able to participate in all employee benefit programs including the health plan, 401(k), and others as approved by the Board. Company as per company policy. |
| Restrictive Covenants | <ul><li>Non-Solicit: During the duration of the agreement and for a period of six months thereafter, you shall not directly or indirectly solicit or induce any person who was (i) an employee or independent contractor of the Company or (ii) a customer, potential customer, supplier or potential supplier of the Company to terminate his or its relationship with the Company.</li><li>Non-Disparagement: During the duration of the agreement and at any time thereafter, you will not publish or communicate to any person or entity any Disparaging (as defined below) remarks, comments or statements concerning the Company, its parents, subsidiaries and affiliates, and their respective present and former members, partners, directors, officers, shareholders, employees, agents, attorneys, successors and assigns. "Disparaging" remarks, comments or statements are those that impugn the character, honesty, integrity or morality or business acumen or abilities in connection with any aspect of the operation of business of the individual or entity being disparaged.</li><li>Confidentiality and Non-Disclosure: During the duration of the agreement and at any time thereafter, you will be subject to customary confidentiality and non-disclosure covenants, and may not disclose any confidential and proprietary information, directly or indirectly, to any person or entity for any reason or purpose whatsoever.</li></ul> |

ACKNOWLEDGE:

Signature: _____ Date_____

Print: _____

Supervisor: _____ Date: _____

Human Resources: _____ Date: _____

EXHIBIT
A

### NOTICE TO KEANE ~~FRACKING~~ EMPLOYEES

**If you worked as a Sand Hauler, ~~Driver, and/or Logistics~~ or Fleet Driver for Keane Fracking at any time in the past three years, you ~~can make a claim for unpaid wages~~are eligible to join this lawsuit.**

A current Keane Frac, LP ("Keane') ~~Fracking~~ employee brought a lawsuit against Keane ~~Fracking~~ for unpaid overtime wages. If, during the last three years, you were employed by Keane ~~Fracking~~ as a Sand Hauler, ~~Driver and/or Logistics~~ or Fleet Driver, you ~~can~~ may choose to join this lawsuit by signing and returning the enclosed consent form. If you do not ~~want~~ wish to ~~join this lawsuit~~ make a claim for unpaid wages, simply do nothing.

#### Why is this notice being sent?

A United States District Judge has determined all Sand Haulers, ~~Drivers, and/or Logistics~~ and Fleet Drivers employed by Keane Frac, LP ("Keane") ~~king~~ in Texas during the last three years ~~as hourly employees~~ should be given an opportunity to join this lawsuit. However, the court has not expressed any view as to whether any current or former employees are owed unpaid overtime wages.

#### Why is there a lawsuit?

The employees in this case claim that Keane ~~Fracking~~ did not pay them for all overtime hours worked as required by federal law.

Keane denies the allegations and has raised numerous defenses. Keane claims that federal law allowed it not to pay overtime to Sand Haulers and Fleet Drivers under the Motor Carrier Exemption, which allows employers not to pay drivers overtime in certain circumstances.

The court has not decided who is right.

#### What happens if I join the lawsuit?

Those who join the lawsuit must prove their claims at trial. If the court finds that you were not paid all overtime wages owed to you, the court will award you money damages. If the court finds you were properly paid all overtime wages owed to you, you will not be awarded any money. You will also be bound by the judgment, whether favorable or unfavorable.

The lawyers of MOORE & ASSOCIATES will be paid according to the fee contract signed by the class representative, which is available to you upon request. If you choose to be represented by MOORE & ASSOCIATES, you will **not** have to pay MOORE & ASSOCIATES unless you recover money from the case. The lawyers of MOORE & ASSOCIATES are also seeking to have the attorney's fees paid by Keane ~~Fracking~~.

Also, you may be required to answer written questions under oath, produce documents relating to your claim, testify at an oral deposition under oath, and/or testify at trial with regard to your claim against Keane.

#### What if I do not join the lawsuit?

You do not have to be represented by Moore & Associates.

1. You may contact an attorney of your own choosing to discuss joining this lawsuit; or

2. You can bring a separate lawsuit for the same claim with an attorney of your own choosing.

3. If you do not want to be a part of this lawsuit, simply do nothing. The decision is yours.

You will not be eligible to receive any money from this lawsuit unless you join. However, you are under no obligation to join.

#### How quickly must I act to join the lawsuit?

If you decide to join the lawsuit, you should act **now**. Every day that passes potentially reduces any recovery you might receive because of the law's statute of limitations. You must respond no later than *[insert date]* in order to join this lawsuit.

#### How do I join the lawsuit?



EXHIBIT
2

tabbies

If you want to join this lawsuit and agree to be represented by MOORE & ASSOCIATES, just

complete the enclosed form and return it by mail, fax, or email to:

Attn: Keane ~~Fracking~~ OT Lawsuit
MOORE & ASSOCIATES
440 Louisiana Street, Suite 675

Houston, Texas 77002
Tel. (713) 222-6775
Fax (713) 222-6739
Scanner@mooreandassociates.net

Please note: you are not a part of the lawsuit until you return the enclosed consent form and the form is filed by the attorney.

**Do not worry about joining this lawsuit as a current employee. Federal law prohibits ~~Keane Fracking an employer~~ from taking any negative action against you because you join this lawsuit.**

**The United States District Court for the Southern District of Texas approved this notice.**

### NOTICE TO KEANE EMPLOYEES

**If you worked as a Sand Hauler or Fleet Driver for Keane Fracking at any time in the past three years, you are eligible to join this lawsuit.**

A current Keane Frac, LP ("Keane") employee brought a lawsuit against Keane for unpaid overtime wages. If, during the last three years, you were employed by Keane as a Sand Hauler or Fleet Driver, you may choose to join this lawsuit by signing and returning the enclosed consent form. If you do not wish to join this lawsuit, simply do nothing.

### Why is this notice being sent?

A United States District Judge has determined all Sand Haulers, Drivers or Fleet Drivers employed by Keane Frac, LP ("Keane") in Texas during the last three years should be given an opportunity to join this lawsuit. However, the court has not expressed any view as to whether any current or former employees are owed unpaid overtime wages.

### Why is there a lawsuit?

The employees in this case claim that Keane did not pay them for all overtime hours worked as required by federal law.

Keane denies the allegations and has raised numerous defenses. Keane claims that federal law allowed it not to pay overtime to Sand Haulers and Fleet Drivers under the Motor Carrier Exemption, which allows employers not to pay drivers overtime in certain circumstances.

The court has not decided who is right.

### What happens if I join the lawsuit?

Those who join the lawsuit must prove their claims at trial. If the court finds that you were not paid all overtime wages owed to you, the court will award you money damages. If the court finds you were properly paid all overtime wages owed to you, you will not be awarded any money. You will also be bound by the judgment, whether favorable or unfavorable.

The lawyers of MOORE & ASSOCIATES will be paid according to the fee contract signed by the class representative, which is available to you upon request. If you choose to be represented by MOORE & ASSOCIATES, you will **not** have to pay MOORE & ASSOCIATES unless you recover money from the case. The lawyers of MOORE & ASSOCIATES are also seeking to have the attorney's fees paid by Keane.

Also, you may be required to answer written questions under oath, produce documents relating to your claim, testify at an oral deposition under oath, and/or testify at trial with regard to your claim against Keane.

### What if I do not join the lawsuit?

You do not have to be represented by Moore & Associates.

1. You may contact an attorney of your own choosing to discuss joining this lawsuit; or

2. You can bring a separate lawsuit for the same claim with an attorney of your own choosing.

3. If you do not want to be a part of this lawsuit, simply do nothing. The decision is yours.

You will not be eligible to receive any money from this lawsuit unless you join. However, you are under no obligation to join.

### How quickly must I act to join the lawsuit?

If you decide to join the lawsuit, you should act **now**. Every day that passes potentially reduces any recovery you might receive because of the law's statute of limitations. You must respond no later than *[insert date]* in order to join this lawsuit.

### How do I join the lawsuit?

If you want to join this lawsuit and agree to be represented by MOORE & ASSOCIATES, just

complete the enclosed form and return it by mail, fax, or email to:

Tel. (713) 222-6775
Fax (713) 222-6739
Scanner@mooreandassociates.net

Attn: Keane OT Lawsuit
MOORE & ASSOCIATES
440 Louisiana Street, Suite 675
Houston, Texas 77002

Please note: you are not a part of the lawsuit until you return the enclosed consent form and the form is filed by the attorney.

**Do not worry about joining this lawsuit as a current employee. Federal law prohibits an employer from taking any negative action against you because you join this lawsuit.**

**The United States District Court for the Southern District of Texas approved this notice.**